# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0105-21

K.M.,[1]

     Plaintiff-Respondent,

v.

V.W.,

     Defendant-Appellant.

_____

     Submitted September 29, 2022 – Decided October 6, 2022

     Before Judges Firko and Natali.

     On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FV-01-1354-21.

     Bernstein & DiBenedetto, PC, attorneys for appellant (Mark A. Bernstein, on the brief).

     South Jersey Legal Services, Inc., attorneys for respondent (Janet Gravitz and Cheryl Turk Waraas, on the brief).

---

[1] We use initials to protect the parties' privacy and the confidentiality of these proceedings. R. 1:38-3(d)(12).

PER CURIAM

Defendant V.W. appeals from the June 23, 2021 final restraining order (FRO) entered against her in favor of plaintiff K.M. pursuant to the Prevention of Domestic Violence Act (Act), N.J.S.A. 2C:25-17 to -35 based on the predicate acts of harassment, N.J.S.A. 2C:33-4; assault, N.J.S.A. 2C:12-1; and terroristic threats, N.J.S.A. 2C:12-3. The Family Part judge determined an FRO was necessary to protect plaintiff from future acts of domestic violence. The parties are unrelated and resided together for five weeks in a rooming house where defendant was employed as the property manager.

On appeal, defendant contends the parties did not have a qualifying relationship under the Act and therefore, the judge lacked jurisdiction to issue the FRO. Defendant does not challenge the judge's findings on the predicate acts of harassment, assault, and terroristic threats. Unconvinced, we affirm.

I.

The facts were established at the one-day trial in June 2021. Represented by counsel, plaintiff testified on her own behalf. Defendant was self-represented. She testified on her own behalf and called her fiancé V.J. as a witness. No items were introduced into evidence by either party.

A-0105-21

On March 2, 2021, plaintiff moved into a rooming house in Atlantic City through the assistance of social services. Defendant also resided at the property at that time. Plaintiff lived in a room on the third floor while defendant occupied the entire first floor and had her own bathroom. Plaintiff testified the tenants shared the "common space" including the kitchen, community room, and two bathrooms. The two shared bathrooms were located in the hallway on the second and third floors.

In addition, plaintiff stated she and defendant shared the kitchen area, which contained a microwave and a stove. In contrast, defendant testified she lives "separate from the floor" in an apartment with her fiancé at the rooming house. Defendant also claims she does not share any of her apartment, kitchen, stove, or bathroom with the other tenants.

After living at the rooming house for about five weeks, plaintiff vacated the premises on April 7, 2021, due to harassment and discrimination by defendant and moved to her new residence in Atlantic City. Plaintiff testified she "did not feel comfortable or even safe with the nature of the things that were going on." According to plaintiff, defendant called her a "tranny" and a "gay faggot." Further, plaintiff stated defendant harassed her former boyfriend by inquiring about his sexual preferences and questioning if he is "on the down

3  A-0105-21

low" and a "faggot." Plaintiff also claimed defendant told her former boyfriend that he could not come to the rooming house and averred defendant's conduct contributed to the demise of her relationship with him. Plaintiff reported these incidents to social services.

On May 23, 2021, plaintiff planned on having a family cookout at her new residence. When plaintiff heard a knock on the door, she testified she thought it was her family; however, it was defendant and her friend D.J. Plaintiff never provided defendant with her new address and never extended an invitation to her to visit. When plaintiff opened the door, she testified defendant said "[s]top trying me, you can get killed out here[,]" and "I will kill you."[2] She further stated defendant called her a "bitch."

Then, as plaintiff attempted to close the door, she alleged defendant grabbed her arm, tried to pull plaintiff out of the house, and attempted to take the wig off her head. Although plaintiff managed to shut the door on defendant, plaintiff sustained red bruises on her wrist area as a result of the attack. Plaintiff

---

[2] Plaintiff testified she did not remember the "exact timeframe" when defendant arrived at her new home, but she wanted to have the cookout around 2:00 p.m. or 3:00 p.m. However, in her complaint, plaintiff states the incident with defendant took place at 6:56 p.m. In contrast, defendant testified she was at work from approximately 6:15 a.m. to 3:00 p.m., and she had no contact with plaintiff that day.

A-0105-21

explained she was frightened after the encounter with defendant. Plaintiff called the police, but by the time they arrived on the scene, defendant and her friend D.J. were already gone. On May 24, 2021, plaintiff filed a domestic violence complaint and sought the issuance of a temporary restraining order (TRO) against defendant, which was granted that day.

After obtaining the TRO, plaintiff claimed she saw defendant and her friend D.J. "in passing," and they told plaintiff they will "whoop [her] behind." Plaintiff also mentioned as a result of defendant's conduct, she has become emotionally drained and suffers from insomnia.

Defendant testified plaintiff called the police on her when she resided at the boarding house. Defendant denied ever calling plaintiff names, threatening to hit her, or having any contact with plaintiff on May 23, 2021. Defendant's fiancé testified he takes defendant to work and picks her up every day; and to his knowledge, she was working on May 23. However, the fiancé indicated he was either at the post office or shopping that day and his recollection of events was not specific. He also testified defendant never said anything derogatory to plaintiff while she lived at the rooming house, and he and defendant have not seen plaintiff since she moved. He also confirmed plaintiff had filed complaints against defendant.

A-0105-21

After considering the testimony, the judge found plaintiff credible and did not accept defendant's version of events. On the issue of jurisdiction, the judge found there was a protected relationship between the parties pursuant to the Act since both were "former household members in a rooming house for a very brief period of time from March until the beginning of April." The judge pointed out:

> [Defendant's testimony] just doesn't connect. Yes, [defendant] may have been working on May 23rd, but we're hearing that it's from 6:20 [a.m.] to 3[:00] p.m. We're looking at an incident that [plaintiff] spoke of occurring sometime after 3[:00 p.m]. And the restraining order is still saying [the incident] occurred on or around 6:56 p.m. I don't find [defendant's] testimony credible as to what occurred during the period of time that [plaintiff] was residing there.

First, the judge determined plaintiff "experienced multiple incidents of harassment in the past, as to being called a tranny, a faggot, being harassed in the ways that she testified to, which she found discriminatory[,]" at the rooming house. Because of the way plaintiff was mistreated by defendant and feeling unsafe, the judge found plaintiff's testimony credible that she had to relocate.

Second, the judge found on May 23, defendant confronted plaintiff, "pulled her out the front door . . . causing an injury to [plaintiff's] right wrist area, lower forearm area, which adds up to an assault." Finally, the judge pointed out there were terroristic threats made by defendant on May 23, such as

6

the statement "[y]ou can get killed out here, stop trying me." The judge concluded there was a need for plaintiff to be granted an FRO. A memorializing order was entered.[3]

## II.

Generally, "findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). "[D]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154

---

[3] On July 12, 2021, defendant filed a motion for reconsideration before the Family Part judge, which was denied. Defendant does not challenge that ruling on appeal.

N.J. at 412 (quoting <u>Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am.</u>, 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions and will review such conclusions de novo. <u>Thieme v. Aucoin-Thieme</u>, 227 N.J. 269, 283 (2016).

The purpose of the Act is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." <u>G.M. v. C.V.</u>, 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting <u>State v. Brown</u>, 394 N.J. Super. 492, 504 (App. Div. 2007)); <u>see also</u> N.J.S.A. 2C:25-18. Consequently, "[o]ur law is particularly solicitous of victims of domestic violence[,]" <u>J.D.</u>, 207 N.J. at 473 (quoting <u>State v. Hoffman</u>, 149 N.J. 564, 584 (1997)), and courts will "liberally construe [the Act] to achieve its salutary purposes," <u>Cesare</u>, 154 N.J. at 400.

Here, defendant contends plaintiff does not meet the definition of a "victim of domestic violence" under the Act. More particularly, defendant asserts "the parties do not qualify as protected former household members under the [Act] and that their relationship does not qualify for jurisdiction for a[n] [FRO]." We disagree.

Our Legislature has pronounced in the Act "it is the responsibility of the courts to protect victims of violence that occurs in a family or family-like setting by providing access to both emergent and long-term civil and criminal remedies

and sanctions." N.J.S.A. 2C:25-18. Moreover, the Act's remedies are to be applied broadly in this State's civil and criminal courts. Ibid. "Accordingly, the Act affords greater protection than generally given to victims of crimes." S.Z. v. M.C., 417 N.J. Super. 622, 625 (App. Div. 2011).

Pursuant to the Act, a "victim of domestic violence" is defined as:

> any person who is [eighteen] years of age or older or who is an emancipated minor and who has been subjected to domestic violence by a spouse, former spouse, or any other person who is a present household member or was at any time a household member. 'Victim of domestic violence' also includes any person, regardless of age, who has been subjected to domestic violence by a person with whom the victim has a child in common, or with whom the victim anticipates having a child in common, if one of the parties is pregnant. 'Victim of domestic violence' also includes any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship.
>
> [N.J.S.A. 2C:25-19(d) (emphasis added).]

The Act does not define "household member." Nonetheless, the term has been interpreted liberally in expanding the court's jurisdiction in a domestic violence situation. S.P. v. Newark Police Dept., 428 N.J. Super. 210, 224 (App. Div. 2012). N.J.S.A. 2C:25-3 to -16, as originally enacted, mandated cohabitation between the alleged perpetrator and the victim. Ibid. However, in 1991, the Act expanded the parameters of the definition to include "present or

former household member[s]." Ibid. We have addressed the breadth of this definition. R.G. v. R.G., 449 N.J. Super. 208, 219 (App. Div. 2017) (quoting Tribuzio v. Roder, 356 N.J. Super. 590, 595 (App. Div. 2003)). When considering if a defendant is a "former household member," courts should evaluate if "the 'perpetrator's past domestic relationship with the alleged victim provides a special opportunity for abusive and controlling behavior.'" N.G. v. J.P., 426 N.J. Super. 398, 409 (App. Div. 2012).

Also, New Jersey courts have liberally construed the definition based on the premise that the [Act] is directed at "violence that occurs in a family or family-like setting." Id. (quoting Smith v. Moore, 298 N.J. Super. 121, 125 (App. Div. 1997)). The touchstone of a "household" is not whether parties reside under a single roof; instead, the meaning varies based on the circumstances. Gibson v. Callaghan, 158 N.J. 662, 677 (1999).

Courts have applied the six-factor test enunciated in Coleman v. Romano, 388 N.J. Super. 342, 351 (Ch. Div. 2006) when determining whether a party is considered a "former household member" pursuant to the Act:

> (1) the nature and duration of the prior relationship;
>
> (2) whether the past domestic relationship provides a special opportunity for abuse and controlling behavior;
>
> (3) the passage of time since the end of the relationship;

(4) the extent and nature of any intervening contacts;

(5) the nature of the precipitating incident; and

(6) the likelihood of ongoing contact or relationship.

[N.G., 426 N.J. Super. at 409-10 (quoting Coleman, 388 N.J. Super. at 351-52).]

The focus is "whether the parties have been so entangled, emotionally or physically—or they will be in the future—that the court should invoke the Act to protect the plaintiff and prevent further violence." Id. (quoting Coleman, 388 N.J. Super. at 351).

In 2015, the definition was amended again, replacing "former household member" with "any other person who is a present household member or was at any time a household member." N.J.S.A. 2C:25–19(d); R.G., 449 N.J. Super. 208 at 219. We determined the 2015 amendments reflect a "significant change" in expanding the scope of the "household member" definition. R.G., 449 N.J. Super. 208 at 219-20.

Here, the judge properly exercised jurisdiction over the parties. We note the matter under review is similar to the fact pattern in S.P. While S.P. emphasized the jurisdictional inquiry should be governed on a case-by-case basis, we concluded two occupants living in a boarding house qualified as

"household members."  428 N.J. Super. at 227.  There, "[t]he sleeping arrangements were similar to a . . . suite with shared space and multiple bedrooms" and both parties had access to a common kitchen area, along with its appliances, and a shared bathroom.  Id. at 228.  And, we noted "[c]rossing paths and interacting would be inevitable in this type of living arrangement."  Ibid. By the same token, here, plaintiff testified about common areas in the rooming house that she and defendant used, such as the shared kitchen, where much of the initial harassment took place.

Contrary to defendant's contentions, our review of the record supports the judge's finding that the parties were household members.  Defendant disparaged plaintiff, verbally abused her, and told her she could not invite company. Eventually, defendant's actions escalated, precipitating plaintiff to vacate the premises because she felt "very uncomfortable" and unsafe.  See Smith, 298 N.J. Super. at 188 (finding that "phone calls sparked by jealousy over a 'boyfriend[]' bore no relationship to the temporary, part-time seashore vacation housing arrangements which the litigating parties shared with other young women the prior summer").  The judge's comprehensive factual findings and legal conclusions that the parties qualify as household members as alleged in the complaint were proven by plaintiff by a preponderance of the evidence.

Defendant argues "[t]he relationship between the [parties] was one of tenant and property manager, which lasted only approximately thirty . . . days." Yet, to be identified as household members, the plaintiff and defendant need not share familial, emotional, or romantic ties. S.Z., 417 N.J. Super. at 625; see also Hamilton v. Ali, 350 N.J. Super. 479, 488 (Ch. Div. 2001) (holding that college dormitory suitemates who have separate bedrooms are "household members" because "the qualities and characteristics of their relationship . . . placed [the] plaintiff in a more susceptible position for abusive and controlling behavior in the hands of the defendant") (quotations omitted).

Furthermore, in classifying when a boarder becomes a household member, the Act does not impose a threshold time period. N.J.S.A. 2C:25-19(d). Here, the parties lived together in the boarding house for about five weeks. While the defendants in S.Z.[4] and Bryant v. Burnett[5] lived in the plaintiffs' households for seven and three months, respectively, and were considered household members, our decisions in these matters did not place any significance on the duration the parties resided together. Defendant's argument is therefore devoid of merit.

---

[4]  417 N.J. Super. at 625.

[5]  264 N.J. Super. 222, 224-26 (App. Div. 1993).

A-0105-21

In relation to domestic violence proceedings, our Supreme Court acknowledged that trial courts have the "obligation . . . to see to it that justice is accomplished and to conduct and control proceedings in a manner that will best serve that goal." J.D., 207 N.J. at 482. Defendant's arguments notwithstanding, we are satisfied that in this case, the judge accomplished that goal.

To the extent we have not addressed defendant's other arguments, it is because they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0105-21